947 F.2d 946
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James E. CAMPBELL, Defendant-Appellant.
 No. 90-5579.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1991.
 
 Before KEITH and BOYCE F. MARTIN, Jr., Circuit Judges, and TAYLOR, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant James E. Campbell ("Campbell") appeals his January 2, 1990, conviction and April 19, 1990, sentence for distribution of cocaine and conspiracy to distribute cocaine. For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 Campbell met Shannon Ladd ("Ladd"), one of the government's key witnesses at trial, in early 1987 while both were imprisoned. Subsequent to their release, Ladd frequently purchased cocaine from Campbell. In September 1988, Ladd contacted the Metropolitan Police Department in Nashville, Tennessee, and offered to make undercover purchases of cocaine from Campbell. Thereafter, Ladd cooperated in a joint investigation between the Metro Police Department and the Drug Enforcement Administration.
 
 
 3
 Pursuant to the investigation, Campbell was charged in nine counts related to alleged unlawful drug-related activities. He was tried jointly with Mario Gonzalez ("Gonzalez") in a jury trial in December 1989. Count I charged Campbell with conspiring with Gonzalez to distribute and to possess with the intent to distribute cocaine from around September 1988 through April 1989. The remaining eight counts were substantive distribution charges related to specific transactions. Campbell was found guilty on all counts.
 
 
 4
 A sentencing hearing was held on April 5, 1990, and April 19, 1990. Campbell was sentenced to 293 months on Count I, 240 months on Count II and 220 months on each of the remaining counts (II, IV, V, VI, VII, VIII, XI), with the sentences to run concurrently. In addition, Campbell was fined $100,000. He raises several issues on appeal, which we will discuss seriatim.
 
 II.
 
 5
 Campbell first challenges the admission at trial of evidence which was seized at the Nashville Metropolitan Airport on April 27, 1989. On that date, Police Officer Keith Freemon ("Officer Freemon") of the Nashville International Police received a dispatch concerning a white Mercedes automobile which had been travelling for an hour between the aisles in the long-term parking lot. Officer Freemon proceeded to the area where the automobile had been seen and observed it moving at a slow speed between the aisles. Freemon, who was on foot, blew a whistle to signify the driver to stop the vehicle. The vehicle continued to move. Officer Freemon blew his whistle again and walked toward the vehicle. One of the passengers exited the vehicle and ran toward Officer Freemon. Officer Freemon drew his weapon and ordered the passenger back into the car.
 
 
 6
 Officer Herbert Miskelly ("Officer Miskelly") then joined Freemon, and both officers approached the vehicle. The vehicle was occupied by Campbell, David Rasmeussen ("Rasmeussen") and Ernest Hinsley ("Hinsley"). Officer Freemon approached Rasmeussen, the driver of the vehicle, and Officer Miskelly approached the passenger side of the vehicle. Officer Freemon smelled alcohol on Rasmeussen and noticed a can of beer between his legs. After failing sobriety tests, Rasmeussen was arrested for driving under the influence of alcohol. Officer Miskelly observed in the vehicle a very large key ring containing about one hundred keys, a vice-grip, pliers, a small hacksaw and a steering lock breaker. He arrested Campbell and Hinsley for possession of burglar's tools.
 
 
 7
 After placing the passengers of the vehicle under arrest, Officers Freemon and Miskelly searched the vehicle and found a plastic bag containing cocaine. They also found a vial and a bag containing cocaine upon searching Campbell. The cocaine was admitted as evidence at trial. Campbell contends that the cocaine was seized as part of an unlawful stop in violation of the Fourth Amendment and, therefore, was improperly admitted at trial. He argues that Officer Freemon lacked reasonable cause to stop the vehicle. See Terry v. Ohio, 392 U.S. 1 (1968). We disagree.
 
 
 8
 The vehicle reasonable aroused Officer Freemon's suspicion because it had been driving slowly through the long-term parking lot for an hour. Most persons using the lot walk to and from their cars on foot or are escorted by an airport shuttle. Under these circumstances, Officer Freemon had sufficient reason to stop and approach the vehicle to speak with the occupants. It was also reasonable for Officer Freemon to stop Hinsley, who ran toward Officer Freemon after he stopped the vehicle. Accordingly, we affirm the district court's admission of the evidence seized from the vehicle and from Campbell following the stop.
 
 
 9
 Campbell argues next that the district court erred in admitting evidence of acts which were not charged in the indictment. The district court admitted evidence of drug sales from Campbell to Ladd during a period prior to that period charged in the indictment. We review the district court's evidentiary ruling for an abuse of discretion. See United States v. Terry, 729 F.2d 1063 (6th Cir.1984).
 
 
 10
 The Federal Rules of Evidence provide that evidence of "other crimes, wrongs, or acts" is admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The district court admitted evidence of prior transactions between Campbell and Ladd to show the establishment and background of their relationship. The court ruled that the probative value of this evidence outweighed any risk of undue prejudice. We find no abuse in the district court's determination to admit this evidence.
 
 
 11
 The next issue is whether the district court erred in refusing to grant Campbell's motion for severance from co-defendant Gonzalez. The decision to order a severance lies within the sound discretion of the trial court, and we may only reverse if the district court abused that discretion. See United States v. Zalman, 870 F.2d 1047 (6th Cir.), cert. denied, 492 U.S. 921 (1976).
 
 
 12
 Campbell argues that the district court should have granted severance in this case because of a prejudicial spillover effect of evidence relating to Gonzalez' drug activities in the spring of 1989. As a general rule, members of a conspiracy are tried jointly, particularly when the same evidence will be used against the alleged members of the conspiracy. United States v. Gallo, 763 F.2d 1504 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). Both Gonzalez and Campbell were charged for conspiring during the entire period from September 1988 through April 1989. Therefore, the evidence regarding activities in 1989 was used against both defendants and was not merely evidence against Gonzalez which "spilled-over" to prejudice Campbell.
 
 
 13
 In addition, in order to show that a district court erred in denying a motion for severance, the defendant seeking severance must show the inability of the jury to separate and distinguish evidence as it relates to the different defendants. See United States v. Murphy, 836 F.2d 248 (6th Cir.), cert. denied, 488 U.S. 924 (1988). There is no evidence that the jury was incapable of separating the evidence in this case. Accordingly, we affirm the district court's denial of Campbell's motion for severance.
 
 
 14
 Campbell argues next that the district court erred in overruling his motion for judgment of acquittal based on a fatal variance. He argues that the alleged conspiracy in the spring of 1989 was independent of the alleged conspiracy in the fall of 1988, and evidence of the 1989 events went beyond the scope of the indictment. Campbell characterizes the 1989 conspiracy as the "independent Mario Gonzalez conspiracy." He implies that there was insufficient evidence to support the jury verdict that he was part of a single conspiracy beginning in 1988 that continued through April 1989. Campbell argues that the evidence linking him to the 1989 events was "at best, minuscule." We conclude, however, that the evidence was sufficient to support the jury verdict that there was a single conspiracy between Campbell and Gonzalez from around September 1988 through April 1989.
 
 
 15
 The jury was specifically instructed that it was a question of fact whether there was a single or multiple conspiracies. The jury concluded that there was one conspiracy between Campbell and Gonzalez from September 1988 through April 1989. Although there was no direct evidence that Campbell participated in the 1989 transactions, it is not necessary to show that each member of a conspiracy participated in every phase of the criminal enterprise. See United States v. Hughes, 895 F.2d 1135, 1140 (6th Cir.1990). There was clear evidence that Campbell acted with Gonzalez in 1988 and that Gonzalez continued in 1989 to refer to Campbell as his partner. We conclude that this evidence was sufficient to support the jury verdict.
 
 
 16
 Campbell then argues that the district court erroneously denied his motion for new trial based on newly discovered evidence. Campbell sought to introduce the testimony of a new witness, Henry Mark Muncey ("Muncey"), to refute the trial testimony of Jeffrey Bryan Smith ("Smith"), a major government witness. We may reverse the district court denial of a motion for new trial only for an abuse of discretion. See United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1983).
 
 
 17
 The district court correctly noted that in order to grant a new trial, the moving party must show that the evidence (1) was discovered after trial; (2) could not have been discovered earlier with diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal if the case was retried. Id. The district court found that the testimony of Muncey would serve the limited purpose of impeaching another witness. In addition, following a hearing on the motion for new trial, the district court found that Muncey's testimony was not credible. We find no abuse in the district court's denial of Campbell's motion for new trial.
 
 
 18
 Finally, Campbell challenges his sentence on various grounds. Because we affirm Campbell's conviction, we need not discuss his sentencing challenges to the extent that they are based on his challenge to the jury verdict. We find no merit in Campbell's remaining sentencing challenges.
 
 
 19
 Campbell argues that his sentence should not have been enhanced by two points because the sales of cocaine occurred within 1,000 feet of a school. See 21 U.S.C. § 845(a). Campbell argues that the enhancement should not apply because there was no evidence of an actual threat to schools or school-age children. We reject this argument because the statute does not require the finding of an actual threat. Campbell also claims that the government was vindictive in seeking this enhancement because he refused to negotiate a guilty plea. However, the evidence does not support this claim. Accordingly, we affirm the two-point sentence enhancement pursuant to § 845(a).
 
 
 20
 Campbell also claims that the district court erred in sentencing him at the upper end of the sentencing range based on his role in the offense. The district court had already raised the level of the offense based on Campbell's role. Campbell reasons that he was punished twice for the same conduct because the offense level was raised and he was also sentenced at the upper end of the range based on his role in the offense. We find no merit in this argument.
 
 
 21
 Campbell does not dispute that the district court acted within its discretion in increasing Campbell's offense level based on his role in the offense. The district court also had the discretion to sentence Campbell at any level within the applicable sentencing guideline range. We have no jurisdiction to review a district court's sentencing decision if the sentence is within the guidelines. See United States v. Reed, 914 F.2d 1288, 1290 (9th Cir.1990). Therefore, we must affirm.
 
 III.
 
 22
 For the above stated reasons, we AFFIRM the January 2, 1990, jury verdict and April 19, 1990, sentence by the Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation